CASE NO. 25-5188

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LUTHER POYNTER, by and through
his guardian, ANITA FERNANDEZ

*Plaintiff-Appellant*

v.

AARON BENNETT, in his official capacity as
Barren County Jailer; and BARREN COUNTY, KENTUCKY

*Defendants-Appellees*

———————————————————————

Appeal from Case No. 1:21-CV-162-GNS
United States District Court
Western District of Kentucky

———————————————————————

**APPELLANT'S RESPONSE TO PETITION FOR
PANEL REHEARING AND REHEARING EN BANC**

———————————————————————

William M. Butler, Jr.
500 West Jefferson Street, Suite 1520
Louisville, KY   40202
Telephone: (502) 582-2020
Email: wmb@kycriminallawyer.com

*Attorney for Appellant*

# **TABLE OF CONTENTS**

Table of Contents ................................................................................................i

Table of Authorities ......................................................................................... ii

Counterstatement of the Case .........................................................................1

    Procedure ...................................................................................................1

    Facts ...........................................................................................................2

Argument...........................................................................................................4

I.      THE CASE DOES NOT MERIT EN BANC REVIEW UNDER
        FRAP 40. ..............................................................................................4

II.    THE PANEL REASONABLY AND CORRECTLY APPLIED
       THE CASE LAW. ...............................................................................6

    A,    Risk "Personal" to Poynter.....................................................7

    B.    "Pattern" of Unconstitutional Conduct ...............................12

Conclusion ......................................................................................................15

Certificate of Compliance .............................................................................16

Certificate of Service .....................................................................................17

# TABLE OF AUTHORITIES

**Cases:**

*Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003) ......................................................15

*Brawner v. Scott Cnty.*, 14 F.4th 585 (6th Cir. 2021),
*reh'g en banc denied*, 18 F.4th 551 (6th Cir. 2021) .............................8, 10-11, 14-15

*Davenport v. MacLaren*, 975 F.3d 537, 541 (6th Cir. 2020) ......................................5

*Davis v. Chorak*, No. 22-1839, 2023 U.S. App. LEXIS 6133
(6th Cir., March 14, 2023) ................................................................. 7-8, 10

*Farmer v. Brennan*, 511 U.S. 825 (1994)...................................................................2

*Franklin v. Franklin Cnty.*, 115 F.4th 461 (6th Cir. 2024)................................. 12-13

*Helphenstine v. Lewis Cnty.*, 60 F.4th 305 (6th Cir. 2023)........................................15

*Morgan v. Fairfield County*, 903 F.3d 553 (6th Cir. 2018).........................................8

*Poynter v. Bennett*, No. 25-5188 (6th Cir., Dec. 17, 2025) ..............................*passim*

*Westmoreland v. Butler Cnty.*, 29 F.4th 721 (6th Cir. 2022)....................................15

**Statutes and Rules:**

Fed. R. App. P. 40 ......................................................................................... 4-6

## COUNTERSTATEMENT OF THE CASE

This appeal presented a straightforward issue: Does Barren County's consistent and longstanding custom — departing from state regulations and its own written handbook — of not classifying its prisoners based on their history of institutional violence constitute deliberate indifference to Luther Poynter's safety, such that the municipality can be deemed liable for the injuries inflicted upon him by repeatedly-violent jail inmates?

One would hardly know that this was the issue, or the facts making Barren County's custom clear, from the rehearing petition. It is silent as to the County's challenged policy, custom and practices, focusing instead on how it assigned Appellant Luther Poynter (Poynter) to his housing area, and what Poynter should have done to protect himself from attack. [Petition for Panel Rehearing and Rehearing En Banc (Petition) at 2-10.] Poynter provides here the factual context on which the panel decision rests.

### Procedure

Appellant Barren County (Barren County, the County, or BCDC) accurately portrays the case history. [Petition at 5-10.] But it dwells on the claims framed by Poynter's initial complaint, reducing to one sentence the fact that Poynter filed an amended complaint. [Petition at 5.] It was the

1

amended complaint, of course, that was subject to Barren County's summary judgment motion and the panel's reversal of the grant of summary judgment.

That amended complaint articulated Poynter's core claim: that by failing, as a matter of longstanding custom, to classify inmates for the risk that they posed to others — as required by Kentucky law and Barren County's written policy manual, — the County showed a deliberate indifference to inmate safety, as a result of which Scotty Wix (Wix) and Timothy Guess (Guess) — who had repeatedly had violent altercations before — were able to brutally assault and permanently injure Poynter. [*See Poynter v. Bennett*, No. 25-5188 (6th Cir., Dec. 17, 2025) (Op.) at 12-13 (detailing allegations of amended complaint), 7-9 (detailing requirements of Kentucky regulations and BCDC written policy to classify inmates for security risks).]

### Facts

The County's factual statement focuses on what its jail employees did in classifying Poynter.[1] [Petition at 2-3.] But the County has the duty not to

---

[1] It also says once again that Poynter had a duty to seek protection from any inmate he feared, hadn't said that he feared Wix and Guess, and may have provoked the attack on him. [Petition at 3-4.] The first two ignore that it is jails and prisons that have the constitutional duty not to be deliberately indifferent to inmate safety precisely because, by incarcerating them, they have barred them from protecting themselves. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The third ignores the record, construed favorably to

2

be deliberately indifferent to Poynter's safety, and any assessment of its deliberate indifference hinges not on what it did in assigning Poynter to a specific housing area; rather, it hinges on what, as a matter of longstanding practice, it never does: assess an inmate's risk of violence against others (especially in light of prior institutional conduct) as part of the classification process, despite being required to do by state law and internal jail written policy. *See* Op. at 7-9 (reciting regulatory and written policy requirements, and BCDC's consistent failure to meet them). The core point is that the County was required to classify each inmate as minimum, medium or maximum security, and was required to gauge prior institutional history in classifying inmates, but never did; as a result, nearly all inmates were housed in general population, without any assessment of whether violent inmates posed a safety risk to others. And general population is minimum security. [DN 95-3, Page ID # 482: Bennett Depo. at 119.]

---

Poynter. Although the County is free to argue to a jury its view of the video it cites, Poynter's expert, Jeff Eiser, relying on years of experience gauging inmate body language, did not deem Poynter's body language in the video to display any argument with Wix. [DN 95-7, Page ID # 552-53: Eiser Depo. at 42-44, 49.] And Barren County's expert, Edward Sweeney, acknowledged that, at specific points in the video, Poynter did not appear to be worried for his safety, nor to be menacing or looking for a fight. [DN 100-4, Page ID # 768-69: Sweeney Depo. at 33-36.] *See* Op. at 4 (reciting Eiser and Sweeney testimony).

Simply put, as vital as classification is — as everyone agreed below, — BCDC just didn't do it. [DN 95-7, Page ID # 549: Eiser Depo. at 30.] And, although it had an adequate written policy in place, BCDC didn't follow it. [DN 95-7, Page ID # 558: Eiser Depo. at 67.]

BCDC records reflect that Guess and Wix had dozens of incident reports involving violence, or the threat of violence, against other inmates or BCDC jail staff. They "were regulars at the jail." [DN 100-5, Page ID # 816: Hawkins Depo. at 15.] Between them, Wix and Guess had eleven assaults [Op. at 20], including five attacks in the year and a half before they attacked Poynter. [Op. at 23-24.] And yet BCDC, consistent with its custom, never classified these two inmates, never considered reclassifying or segregating them, continued to assign them to minimum security general population cells, and never assessed whether they had a tendency to harm others. [*See* Op. at 21-25 (describing how these facts showed notice, tacit approval, and recklessness sufficient to support a municipal liability claim).] And so they were free to assault and permanently disable Poynter.

## **ARGUMENT**

### I.   THE CASE DOES NOT MERIT EN BANC REVIEW UNDER FRAP 40.

Rule 40 requires that a party seeking en banc review of a panel decision "must begin" its petition "with a statement that" the decision

4

conflicts with a Sixth Circuit or Supreme Court decision, "with citation to the conflicting case or cases," Fed. R. App. P. 40(b)(2)(A) and (B), or that the case "involves one or more questions of exceptional importance." Fed. R. App. P. 40(b)(2)(D).

Barren County's petition fails this threshold test. The County begins its petition with a Rule 40 statement saying that the panel "incorrectly found that Poynter presented sufficient evidence" of elements of a municipal liability claim "required pursuant to" Sixth Circuit and Supreme Court cases. [Petition, p.1.] That isn't the same as saying — as Rule 40 requires — that the panel decision conflicts with binding case law, nor does the statement cite to conflicting case law.[2] At bottom, Barren County's petition, and its Rule 40 statement, argue only that the panel got it wrong. That is not reason enough to grant en banc review. *See, e.g., Davenport v. MacLaren*, 975 F.3d 537, 541 (6th Cir. 2020) (Sutton, J., concurring) (noting the "nagging tension between deciding cases correctly and delegating to panels of three the authority to decide cases on behalf of the full court").

---

[2] To be fair, Barren County's argument cites cases that it says undercuts the panel's reasoning. But that isn't the same as a conflict requiring "the full court's consideration … to secure or maintain uniformity of the court's decisions." Fed. R. App. P. 40(b)(2)(A).

Nor can Barren County meet the "exceptional importance" standard of Fed. R. App. P. 40(b)(2)(D); indeed, it doesn't even try. That's because of the case's procedural posture. At issue is merely the grant or denial of summary judgment. That inquiry is inherently fact-based, requiring an in-depth assessment of the record, construction of the record in the opposing party's favor, and application of those facts, so construed, to the governing case law. It isn't the last word on the case, which merely returns to the trial court for further proceedings. Such a focused inquiry is unlikely to have broad applicability to other litigants.

## II.   THE PANEL REASONABLY AND CORRECTLY APPLIED THE CASE LAW.

Barren County finds two flaws in the panel opinion: the failure to require that the County's deliberate indifference subject Poynter to a unique risk personal to him [Petition at 10-13]; and the failure to require that the deliberate indifference result in a pattern of assaults by Wix and Guess (the inmates who permanently disabled Poynter). The former is not required by the case law, and the latter ignores the trial court record. The panel decision thus doesn't conflict with the cases upon which the County relies; and the County's logic would lead to bizarre results that would insulate municipalities from the most egregious forms of deliberate indifference.

6

## A.   Risk "Personal" to Poynter.

The County leans heavily on the district court's characterization of an unpublished case, *Davis v. Chorak*, No. 22-1839, 2023 U.S. App. LEXIS 6133 (6th Cir., March 14, 2023)*,* to argue that Poynter failed to present evidence that he "was personally at 'substantial risk of assault.'" [Petition at 10-11 (quoting R. 109, Page ID # 1048) (in turn quoting *Davis*, at \*3).] The County needs that double layer of citation — the district court's characterization of *Davis* — because the requirement for which the County argues — that Poynter be "personally" at risk — comes from the district court, not from *Davis. Davis* said only that the objective component of an Eighth (for convicted persons) or Fourteenth (for pretrial detainees) Amendment claim is that "objectively, [the inmate] was incarcerated under conditions posing a substantial risk of serious harm." *Davis,* at \*5. It was the district court, not this Court in *Davis*, that added the "personally" at risk element.

*Davis* does not help Barren County. There, jail officials assigned each inmate a security classification, and reviewed and revised those classifications regularly. *Davis*, at \*1-2. That's what Kentucky law and Barren County's written policy manual require. And it's precisely what Barren County did not do; as a matter of longstanding custom, it never

considered an inmate's institutional behavior in assigning prisoners a security classification, never classified inmates as minimum, medium or maximum security, and thus never separated from the general population those inmates who posed a risk of harm to others.

Moreover, *Davis* said almost nothing about municipal liability. After holding that the individual defendants had not violated Davis' rights at all, it rejected the municipal liability claim in one paragraph. *See Davis*, at *8.

Contrary to Barren County's position, and consistent with the panel opinion, to show that Barren County's custom, or *de facto* policy, caused his constitutional harm, Poynter must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injur[ies] were incurred due to execution of that policy." *Brawner v. Scott Cnty.*, 14 F.4th 585, 598 (6th Cir. 2021) (quoting *Morgan v. Fairfield County*, 903 F.3d 553, 566 (6th Cir. 2018)) (quoting in turn *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)) (cleaned up).

Poynter did just that. He identified Barren County's custom of failing to classify jail inmates, as required by KDOC regulations and BCDC's handbook. This includes the County's failure to assess inmates' tendency to harm others in light of their prior institutional record of violence, failure to assign security levels as part of the classification process, and practice of

8

housing all (non-protective custody) inmates in minimum security general population, without first assessing those tendencies and risks.

Poynter also has connected BCDC's custom to the municipality. BCDC itself, and Jailer Bennett in his official capacity, are Barren County. Nor is there any dispute that the Jailer is responsible for BCDC's daily operation, and for ensuring compliance with state regulations, and that Barren County is ultimately responsible for BCDC itself. [DN 95-3, Page ID # 456: Bennett Depo. at 17.]

Poynter also has shown that he incurred his injuries due to the County's execution of its customs. Had BCDC engaged in the required classification process, it likely would have separated Guess and Wix, who had long histories of violence within the Jail, from other inmates, because they posed a threat to all others. [DN 95-7, Page ID # 550: Eiser Depo. at 35-36.] As Poynter's expert, Jeff Eiser, stated in his report, "More likely than not the vicious attack on Mr. Poynter could have been prevented if reasonable safety and risk assessment precautions were followed." [*See* DN 95-7, Page ID # 565: Eiser Depo. at 96.] That is so because "those two individuals who pose that risk to all inmates, not just Poynter, should have been classified in a way that would protect all inmates and Poynter. And

therefore, they wouldn't have met. They wouldn't have been in the same unit." [DN 95-7, Page ID # 565: Eiser Depo. at 96.]

Finally, the County's myopic view makes no logical sense. A municipality would escape liability for being deliberately indifferent to one inmate's safety by being equally indifferent to other inmates' safety. That level of indifference is worse, not better, and can't be grounds for insulating a municipality from harms resulting from its indifference.

Consider this scenario: as a matter of longstanding custom, a municipality allows one police officer each day (chosen at random) to fire a gun into a school playground during recess. One day the officer hits and injures a young student. Barren County's logic would insulate the municipality because the risk to the injured student wasn't "personal," but instead was shared equally with other classmates. That makes no sense and is not the law. And nothing in *Davis*, the case on which Barren County's argument to the contrary hinges, says otherwise.

*Brawner* makes clear that Poynter met his burden of proving municipal custom sufficient, at least for summary judgment purposes, to impose liability on Barren County. There, Brawner was taking four prescribed medications (three of which were controlled substances) at the time of her detention in the local jail. *Brawner*, 14 F.4th at 589. The jail had a

10

policy against administering controlled substances to detainees, a custom for routing medical information from the booking officer to the jail nurse, and a custom of not giving detainees a full medical exam for fourteen days. *Id.*, 14 F.4th at 588-89. Brawner suffered a series of debilitating seizures from the abrupt discontinuation of her medications, and from the jail nurse's failure to promptly address her medical needs or perform a medical examination. (The nurse denied receiving information from the booking officer.) *Id.*, 14 F.4th at 589-90.

This Court held that, even though no claims survived against individual defendants, Brawner was entitled to reach the jury on two of her municipal liability claims. *Id.*, 14 F.4th at 598-600. Specifically, "Brawner presented evidence that would allow a reasonable jury to find that her injuries were incurred due to the execution of the fourteen-day and no-controlled-substances policies." *Id.*, 14 F.4th at 598-99. The policies and customs existed; they resulted in the deprivation of Brawner's needed medical care (and supported a claim of deliberate indifference to that need); and expert testimony linked the abrupt medication disruption to Brawner's seizures. *Id.*[3]

---

[3] And, contrary to Barren County's argument here, *Brawner* allowed those municipal liability claims to survive even those the jail's policies put all inmates at similar risk; they were not "personal" to Brawner.

11

Likewise here, the record contained ample proof that BCDC has a custom of not classifying inmates or assessing the risk they pose to others (especially in light of their institutional history). That custom deprived Poynter of needed safety (and supports a claim of deliberate indifference to that need). And expert testimony has linked the absence of proper classification with Guess and Wix's assault on Poynter. *See* Op. at 23-25.

Poynter's core claim is not that Barren County made a single erroneous decision that resulted in his injury. He does not challenge the specific, singular, decision to assign him to his general population cell (nor, for that matter, the singular decision to assign Guess and Wix there). On the contrary, he challenges the well-entrenched, consistent, longstanding custom of failing to properly classify inmates, including assessing the risk they pose to other inmates (in light of their prior institutional history), assigning them a classification rating (maximum, medium, or minimum), and assigning them housing consistent with that classification rating. Because that custom shows deliberate indifference to inmate safety, Barren County can be deemed liable under prevailing municipal liability law.

## B.    "Pattern" of Unconstitutional Conduct.

The County relies on *Franklin v. Franklin Cnty.*, 115 F.4th 461 (6th Cir. 2024) to argue that, for municipal liability to attach here, — that is, for

12

the County's conduct to be deemed a custom, rather than a one-time event, — Poynter must show that "the prior examples of wrongdoing must violate the same constitutional rights [as Poynter's] and violate them in the same way." [Petition at 14 (citations omitted; cleaned up).]

Poynter does not quarrel with that principle, but disagrees about its application. The appellate panel properly cited *Franklin* and described its elements. [Op. at 20.] It then detailed why this record supported a finding of municipal liability under *Franklin*: Wix and Guess had eleven assaults between them [Op. at 20], including five in the year and a half before they attacked Poynter. [Op. at 23-24.] That was enough to put the County on notice that Wix and Guess posed a risk to inmate safety. [Op. at 24.] And yet the County did nothing: it didn't reclassify or segregate Wix and Guess; it didn't engage in the classification process required by state law and its own written policy, so as to even consider whether to reclassify or segregate them. [Op. at 21-22.] This tacitly approved the County's longstanding custom of not considering an inmate's institutional record of violence in the classification process, regardless of the inmate's repeated acts of violence against others. [Op. at 25.]

But, the County says, Poynter hasn't shown that Wix and Guess violated other inmates' constitutional rights. The County wrongly conflates

13

constitutional injury with constitutional violation. To constitute municipal custom, Poynter must show — and has — that the County repeatedly (and here consistently) engaged in similar conduct that caused constitutional violations. He did so by showing that the County (in violation of state law and internal written policy) never gauges whether inmates' institutional records warrant separating them from the general population, and never assigns inmates a security classification. That is a constitutional wrong — deliberate indifference to inmate safety — whether or not a violent inmate assaults another. And here, the record reflects that Wix and Guess repeatedly assaulted other inmates, thus putting the County on notice that its wrongs resulted in injury. *See* Op. at 25 (describing why the County's consistent failure to remedy its wrongs can be construed as tacit approval).

Return to the hypothetical above. The police department that allows its members to shoot into a school yard has a repeated unconstitutional custom. It is no answer to say that prior shooters didn't hit a student (and that there thus was no constitutional injury). An injured student can prevail by identifying the custom, connecting the policy to the municipality, and showing that her particular injuries resulted from the execution of that policy. *Brawner v. Scott Cnty.*, 14 F.4th 585, 598 (6th Cir. 2021). Poynter's

14

analytic approach, and that of the appellate panel here, is entirely consistent with *Brawner*.[4]

## **CONCLUSION**

For all these reasons, this Court should deny Barren County's petition for panel rehearing and for rehearing en banc.

Respectfully submitted,

/s/ William M. Butler, Jr.
William M. Butler, Jr.
500 West Jefferson Street, Suite 1520
Louisville, KY   40202
Telephone: (502) 582-2020
Email: wmb@kycriminallawyer.com

*Attorney for Appellant*

---

[4] This Court denied en banc review in *Brawner. Brawner v. Scott*, 18 F.4th 551 (6th Cir., Dec. 1, 2021). It likewise denied en banc review in two cases central to the panel's analysis, *Westmoreland v. Butler Co.*, 35 F.4th 1051 (6th Cir., June 2, 2022), and *Helphenstine v. Lewis Cnty.*, 65 F.4th 794 (6th Cir., April 18, 2023).

## **CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,427 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Respectfully submitted,


/s/ William M. Butler, Jr.
William M. Butler, Jr.
500 West Jefferson Street, Suite 1520
Louisville, KY   40202
Telephone: (502) 582-2020
Email: wmb@kycriminallawyer.com

*Attorney for Appellant*

16

## **CERTIFICATE OF SERVICE**

I certify that, on February 4, 2026, I electronically filed this document with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Aaron D. Smith
John A. Sowell
ENGLISH LUCAS PRIEST & OWSLEY, LLP
1101 College Street, P. O. Box 770
Bowling Green, KY 42102-0770
asmith@elpolaw.com

/s/ William M. Butler, Jr._____
William M. Butler, Jr.

17