# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
## CASE NO. 25-5188

LUTHER POYNTER, BY AND
THROUGH HIS GUARDIAN,
ANITA FERNANDEZ

PLAINTIFF/APPELLANT

vs.

AARON BENNETT, IN HIS OFFICIAL
CAPACITY AS BARREN COUNTY
JAILER, AND BARREN COUNTY, KENTUCKY

DEFENDANTS/APPELLEES

On Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green
Civil Action No. 1:21-CV-162-GNS

## SUPPLEMENTAL EN BANC BRIEF ON BEHALF OF APPELLEES

/s/ Aaron D. Smith
Aaron D. Smith
John A. Sowell
Josie F. Keusch
English, Lucas, Priest & Owsley, LLP
1101 College Street; P.O. Box 770
Bowling Green, Kentucky 42102
Phone: (270) 781-6500
Fax. (270) 782-7782
*Attorneys for Appellee*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF THE CASE ............................................................................ 1

ARGUMENT ...................................................................................................... 4

I.      The Party Presentation Rule is Not Absolute ............................................. 4

II.     Sixth Circuit's Fourteenth Amendment Deliberate Indifference Jurisprudence ........................................................................................... 5

III.    *Farmer* Remains Binding Precedent ......................................................... 8

        A. *Kingsley* did not require an overhaul of this Circuit's Fourteenth Amendment deliberate indifference jurisprudence .............................. 9

        B. *Kingsley* does not apply to Poynter's failure to protect claim ............ 10

        C. *Farmer* is the appropriate standard applicable to Poynter's claim ..... 14

        D. Poynter's Supplemental Brief is unpersuasive .................................. 15

IV.     Poynter Has Failed to Establish a Constitutional Violation Under *Farmer* ................................................................................................. 17

V.      Even Under an Objective-Only Standard, Poynter Has Failed to Establish a Constitutional Violation .......................................................... 19

VI.     Poynter Has Not, And Cannot, Establish an Actionable Custom Under *Monell* ................................................................................................. 21

CONCLUSION ................................................................................................. 25

CERTIFICATE OF COMPLIANCE ................................................................. 26

CERTIFICATE OF SERVICE .......................................................................... 26

# TABLE OF AUTHORITIES

**CASES**

*Bd. of the Cnty. Comm'rs v. Brown*,
  520 U.S. 397 (1997) ................................................................22

*Bell v. Wolfish*,
  441 U.S. 520 (1979) ..........................................................6, 14

*Blackmore v. Kalamazoo Cnty.*,
  390 F.3d 890 (6th Cir. 2004) ...................................................6

*Brawner v. Scott Cnty.*,
  14 F.4th 585 (6th Cir. 2021) ......................................5, 7, 8, 9, 10, 11

*Brawner v. Scott Cnty.*,
  18 F.4th 551 (6th Cir. 2021) ....................................................7

*Buetenmiller v. Macomb Cnty. Jail*,
  53 F.4th 939 (6th Cir. 2022) ....................................................5

*Cnty. of Sacramento v. Lewis*,
  523 U.S. 833 (1998) ..............................................................12

*Davis v. Chorak*,
  No. 22-1839, 2023 WL 2487339 (6th Cir. Mar. 14, 2023) .................................19

*Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
  489 U.S. 189 (1989) ..........................................................13, 15

*Draw v. City of Lincoln Park*,
  491 F.3d 550 (6th Cir. 2007) ...................................................9

*Erie R.R. v. Tompkins*,
  304 U.S. 64 (1938) ..............................................................4

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ...................... 1, 4, 6, 7, 11, 14, 15, 16, 17, 18, 20, 21, 23, 25

*Franklin v. Franklin Cnty.*,
  115 F.4th 461 (6th Cir. 2024) ..............................................22, 23

*Graham v. Cnty. of Washtenaw*,
  358 F.3d 377 (6th Cir. 2004) ...................................................22

*Griffith v. Franklin Cnty.*,
  975 F.3d 554 (6th Cir. 2020) ...............................................................6

*Helphenstine v. Lewis Cnty.*,
  60 F.4th 305 (6th Cir. 2023) ...............................................................8

*Helphenstine v. Lewis Cnty.*,
  65 F.4th 794 (6th Cir. 2023) ...........................................................8, 9

*Hopper v. Plummer*,
  887 F.3d 744 (6th Cir. 2018) ...........................................................5, 6

*Hyman v. Lewis*,
  27 F.4th 1233 (6th Cir. 2022) ............................................................7

*Kingsley v. Hendrickson*,
  576 U.S. 389 (2015) ........................................... 4, 5, 7, 8, 9, 10, 11, 12

*Lovell v. Cnty. of Kalamazoo*,
  No. 24-1876, -- F.4th -- (6th Cir. 2026) (en banc) ................................5

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803) ..............................................................4

*Marsh v. Arn*,
  937 F.2d 1056 (6th Cir. 1991) ...........................................................20

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978) ..........................................................................21

*Patterson v. McLean Credit Union*,
  485 U.S. 617 (1988) ............................................................................4

*Paul v. Davis*,
  424 U.S. 693 (1976) ..........................................................................17

*Payne v. Tennessee*,
  498 U.S. 1076 (1991) ..........................................................................4

*Porter v. Nussle*,
  534 U.S. 516 (2002) ..........................................................................11

*R.A.V. v. St. Paul*,
  505 U.S. 377 (1992) ..........................................................................10

iv

*RLR Invs., L.L.C. v. City of Pigeon Forge*,
   4 F.4th 380 (6th Cir. 2021) ................................................................9

*Thompson v. Cnty. of Medina*,
   29 F.3d 238 (6th Cir. 1994) ..............................................................23

*Trozzi v. Lake Cnty.*,
   29 F.4th 745 (6th Cir. 2022) ...............................................................7

*Trozzi v. Lake Cnty.*,
   No. 21-3685, 2022 U.S. App. LEXIS 19144 (6th Cir. July 12, 2022) ..............7, 8

*United States v. Sineneng-Smith*,
   590 U.S. 371 (2020) ............................................................................4

*Villegas v. Metro. Gov't of Nashville*,
   709 F.3d 563 (6th Cir. 2013) ...............................................................6

*Wash. v. Davis*,
   426 U.S. 229 (1976) ............................................................................4

*Westmoreland v. Butler Cnty.*,
   29 F.4th 721 (6th Cir. 2022) .......................................................10, 19

*Westmoreland v. Butler Cnty.*,
   35 F.4th 1051 (6th Cir. 2022) ............................................................10

*Youngberg v. Romeo*,
   457 U.S. 307 (1982) ..........................................................................15

**STATUTES**

42 U.S.C. § 1983 ..................................................................................21

## INTRODUCTION

*Farmer v. Brennan*, 511 U.S. 825 (1994) is binding precedent within the Sixth Circuit and should be re-established as the standard for evaluating Fourteenth Amendment failure to protect claims. Convicted or not, an inmate asserting a failure to protect claim must establish that a prison official knew of and disregarded an excessive risk to his safety. Anything less falls short of *Farmer* and transforms the Constitution into a font of tort law. Though the Sixth Circuit has recently departed from *Farmer* in the Fourteenth Amendment context, this en banc panel now has the opportunity to reconsider and reset its jurisprudential path. In the instant case, Poynter's Fourteenth Amendment claim fails no matter the standard. Accordingly, the District Court's Order must be affirmed.

## STATEMENT OF THE CASE

Barren County (the "County") has thoroughly briefed the factual and procedural background of this matter in its initial brief and Petition for Rehearing En Banc. To avoid burdening this Court with yet another lengthy statement of facts, the County sets forth the following summary:

On December 25, 2020, Luther Poynter (hereinafter "Poynter") was arrested for non-payment of child support and taken to Barren County Detention Center (hereinafter "BCDC" or "the jail") for booking. [R. 95-1, Page ID # 436, Mem. Supp. MSJ] [R. 95-2, Page ID # 451, Booking Sheet]. At booking, Poynter was

1

questioned on many personal and medical subjects. [R. 95-3, Page ID # 457, Depo. of A. Bennett]. Specifically, Poynter was asked whether there was anyone he needed to be separated from, either in the past or currently. Poynter responded in the negative. [R. 95-4, Page ID # 515, Intake Questionnaire].

It is incumbent on the inmate to notify jail staff of individuals that could pose a risk to the inmate's safety so that BCDC can ensure separation. [R. 95-3, Page ID # 471-72, Depo. of A. Bennett]. If a new inmate presented a red flag during intake, such as the potential to cause harm or be harmed, the deputy conducting the intake would notify his/her supervisor for further assessment. [R. 95-3, Page ID # 466; 473, Depo. of A. Bennett]. Poynter presented no red flags, and the seriousness of Poynter's offense(s), or lack thereof, did not warrant him being placed in protective custody/isolation cell. [R. 95-3, Page ID # 481-82, Depo. of A. Bennett].

At the time of Poynter's arrest, as part of its COVID-19 protocols, BCDC isolated new inmates in a holding cell for forty-eight (48) hours before moving them into an observation cell with other recent intakes that cleared the holding period. *Id*. at 464; 474; 476; [R. 95-5, Page ID # 521, Depo. of Captain B. Boston]. This process was recommended by the Department of Corrections. *Id*. Consistent with this process, Poynter was placed in a holding cell until December 28, 2020, and was then moved to general population Cell 524. *Id*. Cell 524 has 10 beds. [R.

2

95-3, Page ID # 480, Depo. of A. Bennett]. Jailer Bennett confirmed that Poynter had no keep-aways with any inmate in Cell 524 at that time. *Id*. at 476.

Poynter's arrival in Cell 524 is documented on the video footage filed of record with the District Court. [R. 96, Video Footage] [R. 97, Page ID # 588, Receipt of Non-Electronic Document]. As the Court will observe, Poynter entered the cell, dropped his mat and personal belongings, and immediately sought out another inmate in the cell – Scotty Wix (hereinafter "Wix"). *Id*. While the exact conversation between Poynter and Wix is unknown, other inmates in Cell 524 confirmed that Poynter asked if Wix was in the cell and was looking to fight. [R. 95-6, Page ID # 535-39, Incident Report]. Soon after, Poynter was attacked by Wix and a second inmate, Timothy Guess (hereinafter "Guess"). *Id*. The attack lasted approximately six seconds. *Id*. BCDC responded within *eleven seconds* and removed Poynter for medical treatment. *Id*.

At no time before his confrontation with Wix and Guess did Poynter notify BCDC staff of any concern for his safety.  [R. 96, Video Footage]. Plaintiff's own jail expert agreed that there is no evidence Poynter took action to notify BCDC his safety was allegedly at risk in Cell 524. [R. 95-7, Page ID # 553, Depo. of J. Eiser]. These facts are not disputed.

3

## **ARGUMENT**

Poynter's Fourteenth Amendment failure to protect claim must be analyzed under the standard articulated in *Farmer v. Brennan*, 511 U.S. 825 (1994), not *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). *Farmer* requires proof that BCDC *knew of and disregarded* an excessive risk to Poynter's health or safety. *Farmer*, 511 U.S. at 837. Poynter has failed to meet this burden, and the County is entitled to summary judgment.

### I.     **The Party Presentation Rule is Not Absolute.**

Poynter's attempt to invoke the party presentation rule as an absolute is futile. As the very case on which Poynter relies states, the "party presentation principle is supple, not ironclad." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020). "There are no doubt circumstances in which a modest initiating role for a court is appropriate." *Id*; *see also Erie R.R. v. Tompkins*, 304 U.S. 64, 78-80 (1938) *Wash. v. Davis*, 426 U.S. 229, 238-39 (1976).

"It is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), and "[i]t is surely no affront to settled jurisprudence to request argument on whether a particular precedent should be modified or overruled." *Patterson v. McLean Credit Union*, 485 U.S. 617, 617 (1988); *see also Payne* v. *Tennessee*, 498 U.S. 1076 (1991) (requesting parties brief whether precedent should be overruled)).

4

It is most certainly appropriate for this Court "to reconsider the standards that should govern a detainee's failure-to-protect claim." *Lovell v. Cnty. of Kalamazoo*, No. 24-1876, -- F.4th -- (6th Cir. 2026) (en banc) (citing *Poynter ex rel. Fernandez v. Bennett*, 169 F.4th 716 (6th Cir. 2026) (en banc) (order)).[1] The current state of this Court's Fourteenth Amendment deliberate indifference jurisprudence begs for clarity; leaving prison officials, detainees, attorneys, and judges alike without any clear direction as to the appropriate standard. It is the province of this en banc panel to say what the law is.

## II.    Sixth Circuit's Fourteenth Amendment Deliberate Indifference Jurisprudence.

There is no dispute that, as a civil contemnor, Poynter's claims arise under the Fourteenth Amendment. *Hopper v. Plummer*, 887 F.3d 744 (6th Cir. 2018) (holding that the Fourteenth Amendment governs a civil contemnor detainee's § 1983 claims).[2] Rather, the issue at hand turns on the appropriate standard under which to analyze a detainee's failure-to-protect claim. Prior to the Supreme Court's decision in *Kingsley*, the answer was clear: *Farmer*'s deliberate indifference

---

[1] Importantly, the panel held that *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939 (6th Cir. 2022) – the case upon which the District Court relied – was, at least in part, inconsistent with *Brawner v. Scott Cnty.*, 14 F.4th 585 (6th Cir. 2021). [DN 22-2, p. 15]. Clearly, this issue is appropriately before this Court.

[2] "Detainee," as used throughout this brief, includes both pretrial detainees and civil contemnors. Regardless of the authority under which they are jailed, their claims arise under the Fourteenth Amendment and are analyzed under the same standards. *See Hopper*, 887 F.3d at 752-54 (affirming district court's application of *Kingsley*, 576 U.S. 389 to civil contemnor detainee's excessive force claim).

5

standard. After *Kingsley*, courts across the country and even panels within this Circuit have disagreed. This prompts the question—how did we get here and where should we go?

In 1994, the Supreme Court articulated the appropriate standard to evaluate prisoners' deliberate indifference claims. *Farmer*, 511 U.S. 825. This test included both a subjective and objective component. *Id*. Importantly, the Supreme Court *expressly rejected* a purely objective test, noting that "**an act or omission unaccompanied by knowledge of a significant risk of harm…cannot under our cases be condemned as the infliction of punishment.**" *Id*. at 837-38 (emphasis added). As *Farmer* noted, the subjective component "incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Id*. at 845; *see also Bell v. Wolfish*, 441 U.S. 520, 547 n.28 (1979) (finding "no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates").

Thereafter, the Sixth Circuit routinely applied *Farmer* to claims of inmates and detainees alike, *Villegas v. Metro. Gov't of Nashville,* 709 F.3d 563 (6th Cir. 2013)*; Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004), and "adopted the deliberate-indifference test wholesale for purposes of the Fourteenth Amendment," *Griffith v. Franklin Cnty.*, 975 F.3d 554, 569 (6th Cir. 2020); *Villegas,* 709 F.3d at 568*; Blackmore*, 390 F.3d at 895. That is, until *Kingsley*.

6

In *Kingsley*, the Supreme Court modified the standard for Fourteenth Amendment *excessive force* claims, holding that a pretrial detainee need only establish "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. Though *Kingsley* went to great lengths to limit its holding to excessive force claims, it sparked bedlam in courts from coast-to-coast leading to a sizable circuit split on whether *Kingsley* extends to claims of deliberate indifference. And even those circuits that have upended their deliberate indifference precedent are split internally as to how to do so.

In 2021, despite admitting that "*Kingsley* did not address whether an objective standard applies in other Fourteenth Amendment pretrial-detainment contexts," a split three-judge panel extended *Kingsley* to Fourteenth Amendment medical-care claims. *Brawner v. Scott County*, 14 F.4th 585, 592, 596 (6th Cir. 2021) (Readler, C. concurring in part and dissenting in part), *reh'g en banc denied*, 18 F.4th 551 (6th Cir. 2021) (Readler, C. dissenting). In doing so, *Brawner* held that a detainee need only establish "something akin to reckless disregard"— extending beyond the bounds of *Kingsley*. *Id.* at 596; *Kingsley*, 576 U.S. at 396.

Since *Brawner*, panels within this Circuit have taken discordant approaches in applying its standard. *See Brawner*, 18 F.4th 551 (Readler, C. dissenting); *Hyman v. Lewis*, 27 F.4th 1233 (6th Cir. 2022); *Trozzi v. Lake Cnty.*, 29 F.4th 745 (6th Cir. 2022), *reh'g en banc denied*, 2022 U.S. App. LEXIS 19144 (6th Cir. July

7

12, 2022); *Helphenstine v. Lewis Cnty.*, 60 F.4th 305 (6th Cir. 2023), *reh'g en banc denied*, 65 F.4th 794 (Readler, C. issuing a statement).

Most germane to Poynter's claim is *Westmoreland v. Butler Cnty.*, which extended *Brawner* to failure to protect claims, adopting a four-part test from the Ninth Circuit. *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 728-29 (6th Cir. 2022) (Bush, J. dissenting), *reh'g en banc denied*, 35 F.4th 1051 (6th Cir. 2022) (Bush, J. dissenting). This ambiguous and unworkable test only intensified the confusion within this Circuit. The panel's opinion here was just the latest domino to fall.

"If this winding jurisprudential path has left you feeling a bit lost, you are not alone." *Brawner*, 14 F.4th at 610 (Readler, C., concurring in part and dissenting in part). Not only does this patchwork jurisprudence leave officers and detainees without a predictable standard to follow—it leaves lower courts without a predictable standard to apply. The solution, however, is simple. *Farmer* remains binding precedent.

### III.   *Farmer* Remains Binding Precedent.

*Brawner*'s extension of *Kingsley*'s objective-only standard to deliberate indifference claims is inconsistent with binding Supreme Court precedent. As explained below, the test set forth in *Farmer* is the appropriate test, and this Circuit's *Farmer*-inspired precedent remains binding.

**A.** ***Kingsley*** **did not require an overhaul of this Circuit's Fourteenth Amendment deliberate indifference jurisprudence.**

"[P]rior published decisions are controlling unless inconsistent with a decision of the United States Supreme Court or the Sixth Circuit sitting en banc." *Draw v. City of Lincoln Park*, 491 F.3d 550, 556 (6th Cir. 2007). This foundational principle is imperative to "how the law develops," ensuring "uniformity, certainty, and stability in the law." *RLR Invs., L.L.C. v. City of Pigeon Forge*, 4 F.4th 380, 390 (6th Cir. 2021) (citations omitted). Just as importantly, "when it seems that the Supreme Court might soon change a doctrine," the Sixth Circuit must "leave that prerogative to the Court" and avoid "anticipat[ing] the Court's direction." *Id*. Otherwise, "each case would be a brand of first-impression exploration." *Id*. So, unless the Supreme Court or this en banc panel mandates otherwise, three-judge panels are bound by this Court's pre-*Brawner* precedent.

*Kingsley* was not an inconsistent Supreme Court decision. It carefully curtailed its holding, emphasizing that it was "with respect to *this* question" only. *Kingsley*, 576 U.S. at 396 (emphasis in original). In fact, *Kingsley* made no mention of the deliberate indifference standard or *Farmer* at all. *Id*. at 389-404. *Brawner* even recognized this, stating that "*Kingsley* did not address whether an objective standard applies in other Fourteenth Amendment pretrial-detainment contexts" *Brawner,* 14 F.4th at 592.

9

*Brawner* interpreted *Kingsley* as conclusively resolving the law on Fourteenth Amendment deliberate indifference claims, yet "[i]t is of course contrary to all traditions of [Supreme Court] jurisprudence to consider the law on this point conclusively resolved by broad language in cases where the issue was not presented or even envisioned." *R.A.V. v. St. Paul*, 505 U.S. 377, 386 n.5 (1992). *Kingsley* was not broad. It explicitly confined its holding to excessive force claims and refused to address deliberate indifference. Nothing in *Kingsley* provides any basis or rationale for extending its application beyond the excessive force context as *Brawner* did.

Similarly, *Westmoreland* interpreted *Brawner*—a medical-care claim—as conclusively resolving the appropriate standard for failure to protect claims. *Westmoreland*, 29 F.4th at 728 (finding that *Brawner* "explicitly [took] the position that a failure-to-protect claim by a pretrial detainee requires only an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly.") In extending *Kingsley* and *Brawner*, *Westmoreland* adopted a four-part test from the Ninth Circuit that is even more ambiguous and unworkable than *Brawner*. *Brawner* did not require such an extension, nor did *Kingsley*.

**B. *Kingsley* does not apply to Poynter's failure to protect claim.**

The Supreme Court has recognized that excessive force claims are intrinsically different than conditions of confinement claims, each requiring

10

different levels of proof. *Porter v. Nussle*, 534 U.S. 516, 528 (2002) (citations omitted). Importantly, excessive force claims require proof of a deliberate *action* whereas deliberate indifference claims address an official's *inaction*.

However, inaction does not raise the same inference as an objectively excessive action. As *Farmer* held,

> [a]n act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage…[b]ut an official's failure to alleviate a significant risk that he should have perceived but did not…cannot under our cases be condemned as the infliction of punishment.

511 U.S. at 838. Note that *Farmer* **did not** hold that knowledge is required to inflict *cruel and unusual punishment*. *Farmer* held that knowledge is required to inflict *punishment at all*. For "a subjective approach isolates those who inflict punishment," and "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." *Id*. at 839, 844.

By eliminating any subjective inquiry, the Sixth Circuit's post-*Brawner* precedent has essentially imposed a de facto negligence standard, which even *Kingsley* agrees is "categorically beneath the threshold of constitutional due process." *Kingsley*, 576 U.S. at 396 (holding that the use of force must still be deliberate, purposeful or knowing). Unlike excessive force claims, deliberate indifference claims require a subjective analysis to isolate those who inflict

11

punishment from those who are negligent, *i.e.*, whether the official's failure to act was deliberate or negligent.

Negligence is the "lowest common denominator of customary tort liability," and is not protected by the due process clause. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). The "Constitution does not guarantee due care on the part of state officials," and "the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* at 848-49 (citations omitted).

The post-*Brawner* de facto negligence standard underscores the dilemma of rigidly applying due process rules. In *Lewis*, the Supreme Court confirmed that:

> Rules of due process are not, however, subject to mechanical application in unfamiliar territory. Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with **preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances** before any abuse of power is condemned as conscience-shocking.

*Id.* at 850 (emphasis added). The inherent distinctions between excessive force and deliberate indifference claims demand a separate analysis, especially when the nature of the underlying right differs. For example, the Eighth and Fourteenth Amendments provide different protections in terms of punishment, necessitating different standards. *Kingsley*, 576 U.S. at 400. There is no distinction, however, between a prisoner's and detainee's right to basic human needs.

12

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). Importantly, this duty does not differ depending on the authority under which the person is held:

> [t]he affirmative duty to protect arises *not from the State's knowledge of the individual's predicament* or from its expressions of intent to help him, but *from the limitation which it has imposed on his freedom* to act on his own behalf.
> …
> [I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf -- through incarceration, institutionalization, or other similar restraint of personal liberty -- which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*Id*. at 200 (emphasis added). In fact, the Supreme Court specifically held that:

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e. g.*, food, clothing, shelter, medical care, and *reasonable safety* -- it transgresses the substantive limits on state action set by the **_Eighth Amendment and the Due Process Clause._**

*Id*. (emphasis added).

An "individual's predicament," or constitutional status, has no bearing on the State's affirmative duty to protect those in its custody. Whether incarcerated, detained, or institutionalized, any person in the State's custody has equal rights to basic human needs. So, unlike the Eighth and Fourteenth Amendment protections

13

against excessive force, which turn on different punishment standards, there is no logical reason to distinguish between a between prisoner's and detainee's right to basic human needs. A detainee's right to basic human needs is no greater than that of a prisoner.

Application of different standards based on conviction status would create an absurd and unworkable result—it would imply that a convicted prisoner's right to food, shelter, clothing, and other basic needs is inferior to a detainee's. Such a result is non-sensical and contradictory of Supreme Court precedent. Yet, by extending *Kingsley* outside the confines of excessive force, this is precisely what post-*Brawner* precedent has done.

### C. *Farmer* is the appropriate standard applicable to Poynter's claim.

In *Farmer*, the Supreme Court thoughtfully articulated the deliberate indifference failure to protect standard which encompasses the rights of inmates and the "Herculean obstacles" of prison administration while avoiding a mere negligence standard. *Farmer*, 511 U.S. at 834; *Bell*, 441 U.S. at 548 n.30 (citations omitted). Under *Farmer*, a prisoner official is liable only if he "knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. *This* should be the standard applicable to Poynter's claim.

While *Farmer* analyzes a prisoner's failure to protect claim under the Eighth Amendment, *Deshaney* mandates that all incarcerated individuals have equal

14

access to basic human needs. In other words, the duty imposed on prison officials to "take reasonable measures to guarantee the safety of the inmates" under the Eighth Amendment is the exact duty imposed under the Fourteenth Amendment. *Id.* at 832-33 (citing *Deshaney*, 489 U.S. at 198-99, 199-200). *Farmer* applies to Poynter's claim, regardless of his constitutional status. This is the only standard consistent with Supreme Court jurisprudence—and until the Supreme Court or this en banc panel determines otherwise, it remains binding precedent.

### D. Poynter's Supplemental Brief is unpersuasive.

Poynter relies heavily on the explicit language of the Eighth and Fourteenth Amendments and ignores the nature of the underlying right allegedly violated. Despite Poynter's effort, the Fourteenth Amendment does not require an objective-only inquiry in every context merely because it lacks an express state-of-mind requirement. Such an interpretation would produce a radical result and would wreak havoc on the entire country's Fourteenth Amendment jurisprudence, in and out of the prison context. Poynter's reliance on incongruent cases, including those addressing legislative acts, is not compelling.[3]

---

[3] Poynter cites *Youngberg v. Romeo*, 457 U.S. 307 (1982), which confirmed that the right to safety is a liberty interest. *Id*. at 315. To the extent *Youngberg* applied an objective-only standard, the Court's subsequent opinion in *Farmer* overruled such a standard. Importantly, however, *Youngberg* confirmed the need for judicial restraint in evaluating the internal operations of the institutions and deference to professional judgment. *Id*. at 322-25.

Nor is Poynter's argument that *Brawner* is controlling. Poynter does not distinguish between claims of excessive force and deliberate indifference. Poynter does not address or acknowledge that *Brawner* overextends *Kingsley* or that *Kingsley* had no bearing upon the holding of *Farmer*. Poynter does not distinguish between claims involving an action versus an inaction. Poynter just states that *Brawner* applies. [DN 35, p. 20-21].

It is evident that neither *Brawner* nor *Westmoreland* are binding—*Farmer* is. Poynter attempts to apply *Farmer* to his favor but fails. Poynter relies on one singular sentence in *Farmer*, disregarding the remainder of its holding. Specifically, Poynter quotes that "the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." [DN 35, p. 19] (quoting *Farmer*, 511 U.S. at 842). Relying only upon this cherry-picked language, Poynter misses the forest for the trees.

Poynter's skewed application of *Farmer* conflates the objective and subjective inquiry in an apparent attempt to water down *Farmer* into *Brawner*. While *Farmer* did provide an example of when an obvious risk "*could be* sufficient to permit a trier of fact to find…actual knowledge," the example was limited to the rase cases where there is evidence of a risk that is "longstanding, pervasive, well-

16

documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk." *Farmer*, 511 U.S. at 842-43 (emphasis added).

*Farmer* then confirmed the limited application of this example in a footnote:

> …the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him… When instructing juries in deliberate indifference cases with such issues of proof, **courts should be careful to ensure that the requirement of subjective culpability is not lost**. *It is not enough merely to find that a reasonable person would have known, or that the defendant should have known, and juries should be instructed accordingly*.

*Id*. at 843, n.8. (emphasis added).

Poynter cannot stake his claim on the fact that a jury may conclude that a reasonable person would have known of a substantial risk. "[S]uch a reading would make of the Fourteenth Amendment a font of tort law," and would disregard the Supreme Court's admonition to be wary of "constitutional shoals that confront any attempt to derive from congressional civil rights statutes a body of general federal tort law; a fortiori, the procedural guarantees of the Due Process Clause cannot be the source for such law." *Paul v. Davis*, 424 U.S. 693, 701 (1976) (citations omitted). *Farmer* is binding precedent and should control this Court's analysis.

**IV.    Poynter Has Failed to Establish a Constitutional Violation Under *Farmer*.**

*Farmer* requires Poynter to establish that a BCDC official was "aware of

17

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. As the record reflects, it is impossible for Poynter to establish that BCDC was aware that Poynter was at a substantial risk of harm.

As Poynter's own expert, Jeff Eiser, agreed, a jail cannot react to a conflict between two inmates if the jail does not know there is a conflict to resolve. [R. 95-7, Page ID #549, Depo. of J. Eiser]. It is undisputed that there is no evidence Poynter took any action to notify BCDC his safety was allegedly at risk in Cell 524. [R. 95-7, Page ID #553, Depo. of J. Eiser]. But perhaps most fatal to Poynter's claim is his expert's admission that there is **no evidence of record indicating that the County had "prior knowledge of conflict between Mr. Poynter, Mr. Guess, and Mr. Wix**" or that "**[Poynter] would be a victim**." [R. 95-7, Page ID #550, Depo. of J. Eiser] (emphasis added).

And with those very admissions, Poynter's entire claim is gutted under *Farmer*. The County could not possibly be aware of an excessive risk to Poynter's safety when Poynter himself made no effort to notify the County that he feared Wix or Guess. And as Poynter's own expert confirms, Poynter failed to produce any evidence whatsoever that Poynter was a likely victim or that the County had any knowledge of a conflict between Guess, Wix, and Poynter. Without any knowledge that Poynter was at a substantial risk of serious harm, the County

18

cannot possibly have been deliberately indifferent to Poynter's rights so as to amount to a constitutional violation under *Farmer*.

## V.   Even Under an Objective-Only Standard, Poynter Has Failed to Establish a Constitutional Violation.

*Westmoreland*, which applied *Brawner* to the failure to protect context, requires proof of (1) an intentional decision, (2) a substantial risk of serious harm, (3) failure to take reasonable measures, and (4) causation. *Westmoreland*, 29 F.4th at 729. Though the County does not concede that Poynter can establish any of the four elements, Poynter's most glaring flaw is that he has failed to present any proof that he was *personally* at a substantial risk of harm.[4]

In *Davis v. Chorak*, this Court specifically held that while an inmate's "criminal history and prior behavioral problems created a general security risk," those allegations were insufficient to establish the plaintiff was "***personally*** at 'substantial risk of assault.'" *Davis v. Chorak*, No. 22-1839, 2023 WL 2487339, at *3 (6th Cir. Mar. 14, 2023)) (citing *Westmoreland*, 29 F.4th at 729) (emphasis

---

[4] The County further questions Poynter's ability to establish causation, especially in light of Edward Sweeney's testimony that, given Poynter's history of violent charges, Poynter was appropriately classified "in the same category of" Wix and Guess. [R. 100-4, Page ID # 783, Depo. of E. Sweeney]. There is no evidence of record that Poynter suffered physical harm *as a result of* BCDC's classification system. Rather, the record, including Sweeney's testimony, the timing of the attack, and witness statements from other inmates, establishes that the attack was motivated for other reasons—not by any alleged inaction by BCDC.

added). *Davis* is consistent with Sixth Circuit precedent, where this Court has held that evidence that a prison official

> knew of [an inmate]'s previous two fights among inmates and that she knew [the inmate] wanted to change rooms…is insufficient to raise a jury question as to whether [the official] had actual knowledge of a genuine, or has [*sic*] one court put it, a 'specific' risk of harm to [the inmate]. *See Ruefly v. Landon*, 825 F.2d 792, 794 (4th Cir. 1987) (while complaint alleged officials generally knew other inmate to be a violent person because he had engaged in two fights with other inmates one of whom he threatened to kill, it failed to allege that they acted in deliberate indifference to specific known risk of harm to assaulted inmate).

*Marsh v. Arn*, 937 F.2d 1056, 1061 (6th Cir. 1991). A genuine or specific risk is a "real risk, not an imagined or hypothetical risk." *Id*. at 1061 n.3.

The prior incidents involving Wix and Guess are not proof of a substantial risk of harm to Poynter personally. As previously addressed, Poynter failed to raise any concerns with Wix and Guess, and the record is devoid of any fact that Poynter, specifically, was a likely victim. And the fact that Guess and Wix had fought with other inmates in the past and posed a general security risk is not enough to show a substantial risk of harm to Poynter personally.

Poynter cherry-picks language from *Farmer* for the proposition that he need not establish a risk that is *personal to him*, [DN 35, p. 23], but as already explained in Section III(D), Poynter's strained interpretation of *Farmer* is misguided and unsupported. To provide this Court with the appropriate context of Poynter's isolated quote, *Farmer* actually says:

20

it does not matter…whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners *in his situation* face such a risk. **See Brief for Respondents 15 (stating that a prisoner can establish exposure to a sufficiently serious risk of harm "by showing that *he belongs to an identifiable group of prisoners who are frequently singled out* for violent attack by other inmates").**

511 U.S. at 843 (emphasis added). There is no evidence of a group risk theory in the record. In fact, Poynter admitted in his original brief that the alleged risk of harm was "to all other inmates, not just Poynter." [DN 14, p. 23, n. 14]. The entire inmate population at BCDC is not an "identifiable group of prisoners who are frequently singled out" as contemplated in *Farmer*.

Poynter cannot establish that he was at a "genuine" or "real risk." At best, he has shown only an "imagined or hypothetical risk" that may or may not apply to all BCDC inmates. That lack of particularity alone defeats Poynter's claim. The analysis could, and should, end here. However, Poynter's *Monell* claim that Barren County had a custom of ignoring its own classification policy fails too.

## VI.   Poynter Has Not, and Cannot, Establish an Actionable Custom Under *Monell*.

Poynter's only claim is against the County. Ordinarily, local governments are not considered to be "persons" under 42 U.S.C. § 1983 and, therefore, are not subject to suit. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, Poynter may maintain a claim against the County under § 1983 by establishing that "(1) that a constitutional violation occurred; and (2) that the County is responsible

21

for that violation." *Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004) (internal quotation marks omitted).

As explained above, Poynter has not established a constitutional violation under *Farmer* or *Brawner*. That alone vitiates Poynter's claim against the County. But, even if the Court were to find that Poynter's constitutional rights were violated, or even that there is a genuine issue of material fact as to whether his rights were violated, Poynter's *Monell* claim still fails.

Poynter raises his *Monell* claim under the "custom" theory of liability, which is a practice that, while not formally approved, "may fairly subject a [private prison] to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of the Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). To succeed, Poynter must establish, among other elements, "the existence of a clear and persistent pattern of unconstitutional conduct." *Franklin v. Franklin Cnty.*, 115 F.4th 461, 472 (6th Cir. 2024) (internal quotation marks omitted).[5]

Importantly, a plaintiff "cannot rely solely on a single instance to prove the existence of an unconstitutional custom." *Id.* (citations omitted). "[T]he similarity between a plaintiff's claim and an alleged pattern of constitutional violations 'must

---

[5] The County does not concede that Poynter can establish that BCDC had notice or constructive notice, that it approved the alleged unconstitutional conduct, or that BCDC was the moving force behind the alleged constitutional deprivation. However, because Poynter cannot establish a clear and consistent pattern or unconstitutional conduct, the County does not address the remaining elements here.

be particularized.'" *Id.* (citations omitted). In other words, "the prior examples of wrongdoing must violate the same constitutional rights [as the plaintiff's] and violate them in the same way." *Id.* (internal quotation marks omitted). In *Franklin*, this required the plaintiff to prove "a pattern of Eighth Amendment violations at the Jail *(i.e., the same constitutional right that Price violated),* that involved some sort of sexual assault on inmates (**i.e.,** *the right was violated in the same way as Franklin's was*)**."** *Id.* at 473 (emphasis added).

Here, Poynter must prove a pattern of constitutional violations at BCDC that involved or were caused by the BCDC's classification system. Importantly, however, "not…every injury suffered by one prisoner at the hands of another…translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. As a result, evidence of a history of prior incidents, without more, does not satisfy the *Monell* standard. As the Sixth Circuit has explained:

> ***although plaintiffs have alleged instances of physical violence between inmates, plaintiffs have provided no evidence*** (e.g. that a misdemeanant was attacked by a felon) ***that such violence is in any way related to the lack of a classification system***. Although this Court must draw all inferences in plaintiffs' favor in addressing the County's motion for summary judgment, plaintiffs have not even met the minimal burden of showing a sufficient inferential connection between the classification system and inmate violence to justify a reasonable fear for personal safety.

*Thompson v. Cnty. of Medina*, 29 F.3d 238, 243 (6th Cir. 1994) (emphasis added).

23

Like the plaintiffs in *Thompson*, Poynter has merely established prior instances of physical violence between Wix and Guess and other inmates but has failed to offer any evidence that said incidents were in any way related to BCDC's classification system. Even drawing all inferences in Poynter's favor, Poynter has not met the minimal burden of establishing an unconstitutional custom.

As the District Court held, Poynter "has not identified any evidence in the record to show that any other incidents of inmate-on-inmate violence had occurred in similar situations—i.e., because Guess or Wix had not been properly classified, or that the Guess or Wix should not have been housed with the other inmate if properly classified." [R. 109, Page ID # 1055, Memo. Opinion & Order]. The prior incidents involving Guess and Wix certainly could have occurred without any constitutional violation at all; in fact, there is no evidence to the contrary.

Poynter presented no evidence of Guess and Wix's prior classification designations at the time of the prior incidents. He presented no evidence of the circumstances at BCDC when those classifications were made or when the incidents occurred. He presented no evidence that Guess and Wix were classified improperly during each incident because BCDC ignored its classification policy. He presented no evidence of similar Fourteenth Amendment violations associated with Guess and Wix's prior incidents. How then can it be said that the prior

24

incident reports are sufficient for a jury to find a clear and persistent pattern of constitutional violations with particular similarity to the one he claims here?

As *Farmer* clearly provides, it simply cannot be assumed that every time one inmate assaults another, the governmental entity having custody of those inmates has committed a constitutional violation. *Farmer*, 511 U.S. at 834. There must be evidence of a clear and persistent pattern ***of similar prior constitutional violations***. This burden is minimal, yet Poynter has failed to establish any basis for a sufficient inferential connection between the classification system and inmate violence.

## CONCLUSION

*Farmer* is the only standard appropriate to analyze Poynter's Fourteenth Amendment failure to protect claim. Poynter cannot establish a constitutional violation under *Farmer*'s test. Nor can Poynter establish a constitutional violation under *Brawner*'s more liberal framework. But no matter what Fourteenth Amendment standard the Court lands on, Poynter's failure to meet the requirements of *Monell* is fatal. This fact alone requires that the Court **AFFIRM** the District Court's Order granting Barren County summary judgment.

/s/ Aaron D. Smith
Aaron D. Smith
John A. Sowell
Josie F. Keusch
English, Lucas, Priest & Owsley, LLP
1101 College Street; P.O. Box 770
Bowling Green, Kentucky 42102

25

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing supplemental brief does not exceed 25 pages in accordance with this Court's March 11, 2026, Briefing Letter [DN 31]. I further certify that the foregoing supplemental brief was prepared with a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font in accordance with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

*/s/ Aaron D. Smith*
Aaron D. Smith

## **CERTIFICATE OF SERVICE**

I hereby certify that Appellees' Supplemental Brief has been filed utilizing the Court's CM/ECF system this 11th day of May, 2026. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished through the CM/ECF system.

*/s/ Aaron D. Smith*
Aaron D. Smith

26