Case No. 25-5188

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

LUTHER POYNTER, by and through his guardian, ANITA FERNANDEZ

*Plaintiff-Appellant*

v.

AARON BENNETT, in his official capacity as Barren County Jailer;
BARREN COUNTY, KY,

*Defendants-Appellees*

On Appeal from the United States District Court
for the Western District of Kentucky
Case No. 1:21-cv-00162

## BRIEF OF THE COMMONWEALTH OF KENTUCKY, STATE OF MICHIGAN, STATE OF OHIO, AND STATE OF TENNESSEE AS AMICI CURIAE IN SUPPORT OF APPELLEES

| | |
|---|---|
| Russell Coleman | Office of Kentucky |
| *Attorney General of Kentucky* | Attorney General |
| Matthew F. Kuhn | 1024 Capital Center Drive, Suite 200 |
| *Solicitor General* | Frankfort, Kentucky 40601 |
| John H. Heyburn | (502) 696-5300 |
| *Principal Deputy Solicitor General* | Matt.Kuhn@ky.gov |
| Jacob M. Abrahamson | Jack.Heyburn@ky.gov |
| *Deputy Solicitor General* | Jacob.Abrahamson@ky.gov |

*Counsel for the Commonwealth of Kentucky*

(Additional Counsel Listed on Next Page)

Dana Nessel
  *Attorney General of Michigan*
Ann M. Sherman
  *Solicitor General*
Michigan Department of
Attorney General
P.O. Box 30212
Lansing, Michigan 48909
(517) 335-7628
ShermanA@michigan.gov

*Counsel for the State of Michigan*

Dave Yost
  *Attorney General of Ohio*
Mathura J. Sridharan
  *Solicitor General*
Office of the Ohio
Attorney General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for the State of Ohio*

Jonathan Skrmetti
  *Attorney General and Reporter*
  *of Tennessee*
Madeline W. Clark
  *Principal Deputy Solicitor General*
Office of the Tennessee
Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202
(615) 253-0144
Madeline.Clark@ag.tn.gov

*Counsel for the State of Tennessee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTERESTS OF THE AMICI STATES .............................................................. 1

INTRODUCTION ................................................................................................. 2

ARGUMENT ......................................................................................................... 6

CONCLUSION .................................................................................................... 13

CERTIFICATE OF COMPLIANCE ................................................................. 15

CERTIFICATE OF SERVICE .......................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Wolfish*,
   441 U.S. 520 (1979)............................................................1, 3, 11, 13

*Brawner v. Scott County*,
   14 F.4th 585 (6th Cir. 2021)...........................................4, 5, 7, 12

*Buetenmiller v. Macomb Cnty. Jail*,
   53 F.4th 939 (6th Cir. 2022)................................................... 10

*Campbell v. Riahi*,
   No. 1:20-cv-678, 2023 WL 5979211 (S.D. Ohio Sept. 13, 2023)................................ 6

*Castro v. County of Los Angeles*,
   833 F.3d 1060 (9th Cir. 2016) (en banc)........................................ 8, 9

*County of Sacramento v. Lewis*,
   523 U.S. 833 (1998)................................................................. 3

*Farmer v. Brennan*,
   511 U.S. 825 (1994).............................................. 2, 3, 8, 9, 12

*Griffith v. Franklin County*,
   975 F.3d 554 (6th Cir. 2020) ............................................4, 7, 12

*Helphenstine v. Lewis County*,
   60 F.4th 305 (6th Cir. 2023)....................................................... 4, 5

*Hopper v. Plummer*,
   887 F.3d 744 (6th Cir. 2018) ........................................................ 8

*Hyman v. Lewis*,
   27 F.4th 1233 (6th Cir. 2022)........................................................ 5

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) ................................................................... 6

*Kingsley v. Hendrickson*,
   576 U.S. 389 (2015)............................................. 4, 5, 7, 9, 10, 11

*Lawler v. Hardeman County*,
   93 F.4th 919 (6th Cir. 2024)...................................................3, 4, 5

*Lovell v. County of Kalamazoo,*
  172 F.4th 931 (6th Cir. 2026) ............................................................................ 6

*Poynter v. Bennett,*
  162 F.4th 664 (6th Cir. 2025) ........................................................................... 10

*Poynter v. Bennett,*
  169 F.4th 716 (6th Cir. 2026) (en banc) ......................................................... 10

*Procunier v. Martinez,*
  416 U.S. 396 (1974) ............................................................................................ 1

*Richmond v. Huq,*
  885 F.3d. 928 (6th Cir. 2018) .......................................................................... 3, 7

*Trozzi v. Lake County,*
  29 F.4th 745 (6th Cir. 2022) ............................................................................... 5

*Turner v. Safley,*
  482 U.S. 78 (1987) .............................................................................................. 1

*United States v. Cabbage,*
  91 F.4th 1228 (6th Cir. 2024) ............................................................................. 6

*Westmoreland v. Butler County,*
  29 F.4th 721 (6th Cir. 2022) ........................................................................... 9, 10

*Westmoreland v. Butler County,*
  35 F.4th 1051 (6th Cir. 2022) .......................................................................... 2, 11

*Wilson v. Seiter,*
  501 U.S. 294 (1991) ............................................................................................ 8

**Statutes**

Ky. Rev. Stat. Ann. § 441.025 ............................................................................... 1

Ky. Rev. Stat. Ann. § 441.055 ............................................................................... 1

Mich. Comp. Laws § 801.1 .................................................................................... 1

Ohio Rev. Code Ann. § 341.21 ............................................................................. 1

Tenn. Code. Ann. § 41-4-103(a) ........................................................................... 1

**Constitutional Provisions**

U.S. Const. amend. VIII ................................................................................... 2

U.S. Const. amend. XIV ................................................................................... 2

**INTERESTS OF THE AMICI STATES**

Amici the Commonwealth of Kentucky, the State of Michigan, the State of Ohio, and the State of Tennessee are the States from which the Sixth Circuit hears appeals. In each State, local jails perform critical, often unheralded, functions in the criminal-justice system. These include safely housing both pretrial detainees—with the purpose of ensuring their presence at trial—and convicted federal and state prisoners or individuals incarcerated for contempt. A local jail might even house all those inmates at the same time. *See, e.g.*, Ky. Rev. Stat. Ann. §§ 441.025, 441.055; Mich. Comp. Laws § 801.1; Ohio Rev. Code Ann. § 341.21; Tenn. Code. Ann. § 41-4-103(a).

Whatever the status of inmates housed in a local jail, the "principle" of "mutual accommodation between institutional needs and objectives and the provisions of the Constitution" "applies equally." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) (citation omitted). Achieving that balance is "inordinately difficult," *Turner v. Safley*, 482 U.S. 78, 84–85 (1987), presenting "Herculean obstacles" for jail officials, *Procunier v. Martinez*, 416 U.S. 396, 404 (1974). So "federal courts have adopted a broad hands-off attitude toward problems of prison administration." *Martinez*, 416 U.S. at 404. Put another way, local jail officials are best positioned to set policies for their varying jail populations, and it should be simple for them to understand what the Constitution demands.

Consistency is what Amici States seek here. This Court's recent deliberate-indifference jurisprudence "changes" whether a local jail official is liable for the same

1

omission "for two individuals with differing trial statuses housed in the same facility." *Westmoreland v. Butler County*, 35 F.4th 1051, 1052 (6th Cir. 2022) (*Westmoreland II*) (Bush, J., dissenting from denial of reh'g en banc). For obvious reasons, these varying standards for inmates sitting in the same jail "render the law more difficult for [jail officials] to discern." *Id.* So Amici States participate here for one reason: to ask the Court to apply the standard in *Farmer v. Brennan*, 511 U.S. 825 (1994), to again resolve this case and future cases like it.[1]

## INTRODUCTION

When jail officials in the Sixth Circuit are accused of failing to protect a prisoner from harm, they must grapple with different paths to liability for different types of inmates. All inmates enjoy some constitutional right to protection from serious risk. For convicted prisoners, it comes from the Eighth Amendment's protection against "cruel and unusual punishments." U.S. Const. amend. VIII. And for pretrial detainees or civil contemnors, it comes from the Fourteenth Amendment's protection against "any state depriv[ing] any person of life . . . without due process of law." U.S. Const. amend. XIV, § 1. Courts have interpreted that Due Process Clause protection to mean that "a detainee may not be punished prior to an adjudication of guilt," but the state "may detain him to ensure his presence at trial and may subject him to the restrictions

---

[1] The facts Luther Poynter alleges are tragic, and Amici States take no position on them or how the constitutional standard applies to them.

2

and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment." *Bell*, 441 U.S. at 536–37.

For some time, the claims available to prisoners asserting Eighth or Fourteenth Amendment rights have, in practice, tracked each other. It's long been true that a pretrial detainee's due-process protections "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *County of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998) (citation omitted). Under the Eighth Amendment, a prisoner must show (1) "conditions posing a substantial risk of serious harm" and (2) a "state of mind . . . of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (citation omitted). The first element is objective, but the deliberate-indifference element is subjective. *Id.* The "inmate must prove both that an officer subjectively knew of facts that created a substantial risk of serious harm to the inmate and that the officer subjectively concluded that this risk existed." *Lawler v. Hardeman County*, 93 F.4th 919, 926–27 (6th Cir. 2024). Mere negligence or recklessness does not suffice. *Id.* at 927.

For decades, this Court treated deliberate-indifference claims brought under the Fourteenth Amendment "under the same rubric" described above. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (citation omitted); *see also Lawler*, 93 F.4th at 927 (collecting cases). With good reason. They arise out of the *same* types of omissions, in the *same* types of facilities, by the *same* types of officials. That's why *Bell*'s due-process inquiry—

3

which at bottom asks whether a jail official had an improper intent to punish—was once thought to "yield the same deliberate-indifference standard" applied to the Eighth Amendment inquiry. *Griffith v. Franklin County*, 975 F.3d 554, 569 (6th Cir. 2020). As with an Eighth Amendment claim based on an official's omission, a court without proof of actual knowledge has no way to infer improper intent.

But this Court in recent years jettisoned its "traditional approach" to deliberate-indifference claims under the Fourteenth Amendment. *Lawler*, 93 F.4th at 927. The cause was the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). In the context of a pretrial detainee's excessive-force claim, the Supreme Court held that once an inmate proves that an official "purposely or knowingly used" force against them, whether that force was excessive requires "an objective standard," "turn[ing] on the 'facts and circumstances of each particular case.'" *Id.* at 396–97 (citation omitted). Taking one side of a circuit split, this Court extended *Kingsley*'s holding to the failure-to-protect context in *Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2021). That ultimately meant it "settled on a test that reduced *Farmer*'s subjective element from 'actual knowledge to recklessness.'" *Lawler*, 93 F.4th at 927 (quoting *Helphenstine v. Lewis County*, 60 F.4th 305, 316 (6th Cir. 2023)). Under *Brawner*, "[p]retrial detainees need only prove that the officers *recklessly disregarded* a risk so obvious that they knew or should have known of it." *Id.*

Respectfully, *Brawner* and its follow-on decisions were wrong to abandon the *Farmer* standard for pretrial detainees' failure-to-protect claims. *Brawner* did so because it thought that "*Kingsley* requires modification of the subjective prong of the deliberate-indifference test for pretrial detainees." 14 F.4th at 596. But *Kinglsey* limited its reach to "the context of excessive force claims brought by pretrial detainees." 576 U.S. at 402. *Kingsley*'s limited reach matters because the claim here is different—*Kingsley* is about a jail official's deliberate action, whereas a deliberate-indifference claim is about a jail official's omission. The Fourteenth Amendment protects inmates from intentional punishment. For deliberate acts, that intent can be inferred with objective proof. That's not true for omissions, where a court needs *Farmer*'s subjective inquiry to determine whether a jail official had improper intent.

What's more, *Kingsley*'s poor fit in the failure-to-protect context was apparent from the jump, as *Brawner*'s test was "far from clear," *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022), causing some panels of this Court to "disagree[] over what *Brawner* required," *Lawler*, 93 F.4th at 927; *see also Trozzi v. Lake County*, 29 F.4th 745, 757–58 (6th Cir. 2022) (applying *Brawner* to allow a modified subjective inquiry into actual knowledge); *Helphenstine*, 60 F.4th at 316 (applying *Brawner* to require recklessness). Problems associated with that disagreement persist: at least one district court has suggested that "[a]bsent clarification, the safest course is perhaps to analyze such claims

5

under both standards, with fingers crossed that they agree." *Campbell v. Riahi*, No. 1:20-cv-678, 2023 WL 5979211, at *4 (S.D. Ohio Sept. 13, 2023).

Put simply, *Brawner*'s rejection of decades of precedent treating like deliberate-indifference claims alike was mistaken, and it has created far more conflict among courts than clarity for inmates and jail officials. The en banc Court should now correct this course by again holding that the *Farmer* standard applies.

## ARGUMENT

The Court should hold that an inmate asserting a deliberate-indifference claim under the Fourteenth Amendment must prove that a jail official knew of and disregarded an excessive risk to the inmate's health and safety.[2] Doing so will return this Court to the test most consistent with the text of the Fourteenth Amendment and Supreme Court precedent interpreting it. And it will provide lower courts and litigants with a workable standard for future cases.

**1.** The Court should start by rejecting *Brawner*'s premise that *Kinglsey* changed the law in the deliberate-indifference context. *Brawner* viewed *Kinglsey* as "an inconsistent

---

[2] In his supplemental brief, Poynter urges (at 5–7) the Court to avoid this question because this case was litigated up to now with *Kingsley*'s objective test in mind. But the Court has "an independent obligation to get the law right." *United States v. Cabbage*, 91 F.4th 1228, 1231 (6th Cir. 2024); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). That's especially true when the full Court is deciding the law of the Sixth Circuit. *E.g.*, *Lovell v. County of Kalamazoo*, 172 F.4th 931, 936 (6th Cir. 2026) (explaining that the en banc Court here "agreed to reconsider the standards that should govern a detainee's failure-to-protect claim").

Supreme Court decision that requires modification of [the Court's] caselaw," thus giving it license to "amend [the deliberate-indifference] standard" for pretrial detainees. *Brawner*, 14 F.4th at 596. But nothing in *Kingsley* "calls" the *Farmer* standard's applicability here "into serious doubt." *Contra Richmond*, 885 F.3d at 938 n.3.

For one, *Kingsley* asked only what a pretrial detainee must do "to prove an excessive force claim." 576 U.S. at 391–92. It thus dealt exclusively with claims about *affirmative acts* taken by jail officials. In particular, it asked how courts should interpret "force (a series of events in the world) that the defendant *deliberately* (not accidentally or negligently) used." *Id.* at 396 (emphasis added). So it was a mistake to read *Kingsley* to make a "clear delineation between" all types of inmate claims under the Eighth and Fourteenth Amendments. *Brawner*, 14 F.4th at 596.

The better understanding of *Kingsley* is as an application of *Bell v. Wolfish* in the excessive-force context. *Bell* requires asking whether an inmate with Fourteenth Amendment (but not yet Eighth Amendment) rights has been punished by jail officials. *Griffith*, 975 F.3d at 569. And it answers that question by weighing the jail official's act or omission against a legitimate governmental objective. *Id. Kingsley* held that an inmate with an excessive-force claim can meet his burden under *Bell* with objective proof that a deliberate use of force was excessive. *Kingsley*, 576 U.S. 398–99. But holding that objective proof is sufficient to assess an official's deliberate act does not logically make the same true for assessing an official's omission.

7

That's why it's telling that *Kingsley* made no mention of the *Farmer* standard or deliberate-indifference claims. Although derived from the same constitutional guarantee, they are of a different category than excessive-force claims. *See, e.g.*, *Farmer*, 511 U.S. at 835. The key distinction is between claims about an official's action and an official's failure to act. Deliberate actions might be unconstitutional punishments if they are objectively excessive or objectively unreasonable. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1085 (9th Cir. 2016) (en banc) (Ikuta, J., dissenting). But "a failure to act is not punishment at all unless the government official actually knew of a substantial risk and consciously disregarded it." *Id.* (citation omitted) That "follows from the 'intent requirement' implicit in the word 'punishment.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)).

For the same reason, Poynter's heavy reliance (at 7–11) on *Hopper v. Plummer*, 887 F.3d 744 (6th Cir. 2018), is misplaced. The Court there held that because the Fourteenth Amendment applies to a civil contemnor's excessive-force claim, *Kingsley* applies and "obviate[s] the need for any analysis under the Eighth Amendment's subjective prong." *Id.* at 752. But no one doubts the proposition that *Kingsley* governs such excessive-force claims, or that the Fourteenth Amendment protects civil contemnors the same way it does pretrial detainees. *Hopper* does not answer whether *Kinglsey* should extend beyond cases involving a jail official's deliberate action to the failure-to-protect context.

And that makes sense. When an act is deliberate, a court may infer intent to punish and use an objective inquiry. *Kinglsey*, 576 U.S. at 398–99. But that inference does not hold when an inmate proves only an "omission unaccompanied by knowledge of a significant risk of harm." *Farmer*, 511 U.S. at 837–38. State tort law may remedy such negligence, but it is "beneath the threshold of constitutional due process." *Kinglsey*, 576 U.S. at 396. Because acts and omissions are altogether different from the perspective of punishment, the Court should hold that *Kinglsey*'s reasoning does not extend beyond claims involving deliberate actions.

**2.** The *Kinglsey* standard's inapplicability in the deliberate-indifference context is borne out by its poor fit in failure-to-protect cases. The Court has interpreted *Kinglsey* to require a four-part test in the failure-to-protect context. *Westmoreland v. Butler County*, 29 F.4th 721, 729 (6th Cir. 2022) (*Westmoreland I*) (citing *Castro*, 833 F.3d at 1071). It holds a jail official liable for an omission if he (1) "act[s] intentionally," (2) "in a manner that puts the plaintiff at substantial risk of harm," (3) "without taking reasonable steps to abate that risk," and (4) that failure "actually cause[s] the plaintiff's injuries." *Id.* The third element incorporates *Brawner*'s rejection of *Farmer*'s subjective inquiry into the official's knowledge, requiring only that "the officer must have acted with 'reckless disregard.'" *Id.* at 730 (citation omitted).

Taken at face value, several problems are apparent from this post-*Brawner* test. One is the first element, which purports to look to an officer's intent while

simultaneously endorsing in the third element *Brawner*'s rejection of a subjective inquiry. At best, if meant to prevent liability for accidental omissions, the requirement is "superfluous" given the recklessness inquiry in the third element. *Westmoreland I*, 29 F.4th at 738–39 (Bush, J., dissenting). But the first element could also "defeat" the "nominal goal of permitting liability" for recklessness, if read to require a subjective inquiry into the officer's state of mind. *Id.* at 739. The upshot of this circular ambiguity is "confusion in any practical application." *Id. Compare Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 945–46 (6th Cir. 2022), *with Poynter v. Bennett*, 162 F.4th 664, 678–79 (6th Cir. 2025), *vacated by* 169 F.4th 716 (6th Cir. 2026) (en banc).

The third element is no less troubling. In practice, allowing objective civil-law recklessness to suffice in a deliberate-indifference case amounts to constitutionalizing inmate negligence claims. Its attempt to prevent only heightened risks "makes little difference," because "[j]ails are inherently risky places to be." *Westmoreland I*, 29 F.4th at 735 (Bush, J., dissenting). In other words, "the risk is already elevated" compared to the risk outside jails, so "the standard collapses into de facto negligence." *Id.* As explained above, state tort law—not the Fourteenth Amendment—is the proper source of such claims. *Kingsley*, 576 U.S. at 396.

This brief description of the difficulties associated with grafting *Kingsley* into the failure-to-protect context does not fully capture what one member of this Court called "the post-*Brawner* confusion" extant throughout this Court's deliberate-indifference

10

jurisprudence. *Westmoreland II*, 35 F.4th at 1052 (Bush, J., dissenting from denial of reh'g en banc). This five-year experiment with *Brawner* has proven only that *Kingsley* should not be read to change this Court's long-settled approach to such claims.

**3.** Those problems point to one solution: the Court should return to applying *Farmer*'s standard to all failure-to-protect claims. That standard best protects the Fourteenth Amendment right to be free from punishment without due process.

At bottom, the "proper inquiry" for the Court is whether a jail official's failure to act "amount[s] to punishment of the detainee." *Bell*, 441 U.S. at 535. One of *Bell*'s key assumptions is that "the purpose of [a jail] is to detain," so some restrictions "are inherent incidents of confinement in such a facility." *Id.* at 537.  To that end, *Bell* requires courts to look to "the purpose of punishment." *Id.* at 538.  In some cases, that could mean "an expressed intent to punish." *Id.*  In others, a court might ask whether "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective"—and is thus not punishment—or "is arbitrary or purposeless," such that a court could "infer" an intent to punish. *Id.* at 539.

That's why Poynter is wrong to read (at 12–15) *Bell* to require an "objective standard" in all cases. *Bell* dealt with affirmative restrictions on inmates, not a failure to act. 441 U.S. at 527–28.  And no doubt, as Amici States explain above, an objective inquiry makes sense for identifying an intent to punish in that context and some others. *Kinglsey* makes that much clear. 576 U.S. 398–99. But that's not true for all cases.

11

When an official is accused of failing to act, "the subjective inquiry serves" to "isolate[] those who inflict punishment." *Brawner*, 14 F.4th at 605–06 (Readler, J., concurring in part and dissenting in part) (quoting *Farmer*, 511 U.S. at 839). A failure to act, without more, does not give rise to an inference that an official intended to punish an inmate. It instead produces a range of inferences. That range could include negligence, recklessness, or punitive intent. Or it could include that the official acted "pursuant to proper regulatory goals." *Griffith*, 975 F.3d at 569. In other words, it does not answer the ultimate question *Bell* asks. So the analysis under *Farmer*'s subjective prong provides the necessary, additional proof to infer the required intent. Under it, an inmate must prove that a jail official had actual knowledge of a substantial risk to the inmate's health or safety and consciously chose to disregard that risk. *Farmer*, 511 U.S. at 837–38. With that proof, the only fair inference is an intent to punish—such deliberate indifference could not be "reasonably related to a legitimate government objective." *Griffith*, 975 F.3d at 569.

\*\*\*

Applying *Farmer*'s standard across the board is no small matter. Every day in Amici States, jail officials face the difficult and thankless task of maintaining the health and safety of those in custody. That task is only made more difficult when federal courts adopt conflicting standards applicable to inmates housed in the same facilities, depending only on their trial status. Returning to the *Farmer* standard allows federal

12

courts to root out official acts with an unconstitutional intent to punish, rather than serve the governmental purpose of a jail, and keeps the day-to-day questions of "how best to operate a detention facility" with local jail officials. *Bell*, 441 U.S. at 539.

## CONCLUSION

The Court should hold that the deliberate-indifference test in *Farmer* applies to failure-to-protect claims brought by all inmates, regardless of status.

Respectfully submitted by,

*s/ Jacob M. Abrahamson*
Russell Coleman
  *Attorney General*
Matthew F. Kuhn
  *Solicitor General*
John H. Heyburn
  *Principal Deputy Solicitor General*
Jacob M. Abrahamson
  *Deputy Solicitor General*

Office of the Kentucky
Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Jack.Heyburn@ky.gov
Jacob.Abrahamson@ky.gov

*Counsel for the Commonwealth of Kentucky*

(Additional Counsel Listed on Next Page)

13

Dana Nessel
  *Attorney General of Michigan*
Ann M. Sherman
  *Solicitor General*
Michigan Department of
Attorney General
P.O. Box 30212
Lansing, Michigan 48909
(517) 335-7628
ShermanA@michigan.gov

*Counsel for the State of Michigan*

Dave Yost
  *Attorney General of Ohio*
Mathura J. Sridharan
  *Solicitor General*
Office of the Ohio
Attorney General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for the State of Ohio*


Jonathan Skrmetti
  *Attorney General and Reporter*
  *of Tennessee*
Madeline W. Clark
  *Principal Deputy Solicitor General*
Office of the Tennessee
Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202
(615) 253-0144
Madeline.Clark@ag.tn.gov

*Counsel for the State of Tennessee*

14

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the page limitation in Fed. R. App. P. 29(a)(5) because it is twelve and one-half pages long, less than one-half the length the Court authorized for the parties' supplemental briefs, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Garamond font using Microsoft Word.

*s/ Jacob M. Abrahamson*

## CERTIFICATE OF SERVICE

I certify that on May 19, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Jacob M. Abrahamson*